1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

UNITED STATES OF AMERICA,

12

Plaintiff,

13

v.

14

AZUCENA TORRES (6),

15

Defendant.

16
17
18

Case No.:  19-cr-03255-BTM

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AZUCENA TORRES' MOTION TO SUPPRESS EVIDENCE AND GRANTING DEFENDANT BUGARIN'S JOINDER MOTION**

**[ECF NOS.  397, 462]**

19     Before the Court is Defendant Azucena Torres' Motion to Suppress

20 Evidence.  (ECF No. 397 ("Mot.").)  Defendant's original April 27, 2021 filing

21 omitted certain exhibits that Defendant indicated would later be filed under seal.

22 (*Id.*)  On June 1, 2021, Defendant filed the Motion with the previously omitted

23 exhibits. (ECF No. 447.)  Defendants Jose Anthony Diaz, Mercedes Gonzalez-

24 Diaz, Sergio Partida, Susan Gonzalez, Jose Morales, Victor Gonzalez, Jose

25 Demara Flores, and Ana Karen Robles-Ortiz have joined the Motion.  (ECF No.

26 460.)  On July 20, 2021, Defendant Anthony Bugarin moved to join the Motion.

27 (ECF No. 462.)  The Court **GRANTS** Defendant Anthony Bugarin's joinder

28 motion.  The Court heard oral argument on July 19, 2021 and September 24,

1  2021.  For the reasons discussed below, Defendant's Motion is **GRANTED IN**
2  **PART AND DENIED IN PART**.

3  ## I. BACKGROUND

4       On August 23, 2019, Defendant Azucena Torres and her co-defendants
5  were charged with committing forced labor (18. U.S.C. § 1589), document
6  servitude (18. U.S.C. § 1592), benefits fraud (7 U.S.C. § 2024(b)), and
7  conspiracy to commit one or more of those offenses (18. U.S.C. § 371), in
8  relation to an alleged scheme involving participants of Imperial Valley Ministries
9  ("IVM").  (ECF No. 1.)

10      On May 16, 2018, Magistrate Judge Karen Crawford issued search
11  warrants for the following locations related to IVM: **(a)** 427 Broadway Street, El
12  Centro, CA; **(b)** 463 West Hamilton Avenue, El Centro, CA; **(c)** 2041 Low Road,
13  El Centro, CA; **(d)** 1810 Smoketree Drive, El Centro, CA; **(e)** 517 Jefferson
14  Avenue, Chula Vista, CA; and **(f)** 205 Lopez Court, Calexico, CA.  (ECF No. 447-
15  2, Exh. A., at 3, 8, 14, 20, 25, 30.)  The warrants specified "the following
16  evidence, fruits, and instrumentalities to be searched for and seized," which
17  pertained to the charges in the indictment, and were limited in time from
18  approximately January 1, 2016 to the date of the warrants: **(a)** "identification
19  documents tending to identify victims, subjects, associates, or co-conspirators,
20  including (actual or purported) passports, (actual or purported) identification
21  documents, government-issued identification documents, Social Security"; **(b)**
22  "benefits documentation, including state benefits, welfare cards, coupons, food
23  stamps"; **(c)** "business records, including bank account records, ledgers, log
24  books, or related documentation of victims signing in or out, acknowledging the
25  rules and responsibilities, hours worked by victims, funds owed to victims, and
26  amounts deducted from funds owed to victims for various charges and
27  expenses"; **(d)** "indicia of travel of persons committing such crimes, their
28  associates and co-conspirators, their victims, and others who have or may

accompany victims during travel, including drivers' licenses, vehicle registrations, maps, fuel receipts, bus tickets, and travel itineraries"; **(e)** "documents and related items tending to show dominion or control over locations used to commit such offenses, including utility bills or other mail addressed to residents"; **(f)** "personal belongings of victims, or provided to victims, including toiletries, clothing, bedding, photographs, Government benefits, credit cards, keys, and food"; **(g)** "correspondence with persons involved in the recruitment, transportation, employment, harboring, oversight, management, or contracting of victims"; **(h)** "representations made to victims, including documentation or recordings, flyers, solicitations, business cards, actual or purported work contracts, rules, or related documentation of victims' obligations or responsibilities"; and **(i)** "locks or other physical barriers to impede egress from places used to harbor victims."  (*Id.* at 6-7, 10-11, 17-18, 22-23, 27-28, 32-33.) The applications for the search warrants were supported by the affidavit of FBI Special Agent James Koch.  (*Id.* at 34-83.)

On June 19, 2018, Magistrate Judge Karen Crawford issued a second set of search warrants for the following locations: **(a)** 1765 Hamilton Avenue, El Centro, CA; and **(b)** 205 Lopez Court, Calexico, CA.  (ECF No. 447-3, Exh. B, at 2, 7.)  The search warrant for 1765 Hamilton Avenue, El Centro, CA specified the same items to be seized as the first set of search warrants.  (*See id.* at 5-6.)  The search warrant for 205 Lopez Court, Calexico, CA specified the items to be seized as "[p]ersonal belongings of victims, or provided to victims, including toiletries, clothing, bedding, photographs, Government benefits, credit cards, keys, and food," including "funds obtained by IVM participants through fundraising as directed by IVM members."  (*Id.* at 10.)  Both search warrants were limited in time to items from approximately January 1, 2016 to the date of the search warrants.  (*Id.* at 5, 10.)  The applications for the second set of search warrants were supported by a second affidavit of FBI Special Agent James Koch.

19-cr-03255-BTM

1  (*Id.* at 14-62.)

2  ## II. DISCUSSION

3  Defendant Torres and her co-defendants move to suppress all of the

4  evidence seized as a result of the search warrants based on the following

5  grounds: **(a)** the warrants lacked particularity; **(b)** the execution of the search

6  warrants exceeded the scope of the search warrants; **(c)** the magistrate judge

7  was not neutral and detached; and **(d)** the search warrants lacked probable

8  cause.  (*See* ECF No. 397-1.)  The Court addresses each argument in turn.

9  ### A. Standing

10  The Court first addresses which searches each Defendant has standing to

11  challenge.  "Fourth Amendment rights are personal rights which, like some other

12  constitutional rights, may not be vicariously asserted."  *Rakas v. Illinois*, 439 U.S.

13  128, 133–34 (1978) (internal citation and quotation omitted).  "A person may not

14  claim his Fourth Amendment rights have been violated if that person lacks a

15  legitimate expectation of privacy in the premises searched.  *United States v.*

16  *Schram*, 901 F.3d 1042, 1044 (9th Cir. 2018) (internal citation and quotation

17  omitted).  "An individual has a legitimate expectation of privacy if: (1) the

18  individual demonstrates a subjective expectation of privacy in the place being

19  searched, and (2) this subjective expectation is one that society accepts as

20  objectively reasonable."  *Id.* (internal citation and quotation omitted).  During the

21  September 24, 2021 hearing, the Government stipulated that each Defendant at

22  least had standing as to the locations in which they resided at the time of the

23  execution of the search warrants.  The following Defendants have established

24  that they resided at the following locations at the time of the relevant searches: **(i)**

25  Azucena Torres and Arnoldo Bugarin resided at 463 West Hamilton Avenue, El

26  Centro, CA, (ECF No. 397-4, Exh. C, ¶ 5; ECF No. 462-1 at 1); **(ii)** Jose Morales,

27  Ana Karen Robles-Ortiz and Sergio Partida resided at 2041 Low Road, El

28  Centro, CA, (ECF No. 409, Exh. K, ¶ 3; ECF No. 416-1, ¶ 3; ECF No. 387-2, Exh.

B, ¶ 7); **(iii)** Susan Gonzalez and Victor Gonzalez resided at 1810 Smoketree Drive, El Centro, CA, (ECF No. 408-1, ¶ 3; ECF No. 410-1, ¶ 3); and **(iv)** Jose Anthony Diaz and Mercedes Gonzalez-Diaz resided at 205 Lopez Court, Calexico, CA during the execution of the first search warrant, (ECF No. 391-1, ¶ 6; ECF No. 398, Exh. A, ¶ 5; ECF No. 469-1, ¶ 2), and Jose Flores resided at that location during the execution of the second search warrant, (ECF No. 471-1, ¶ 2).  The Court holds that each Defendant has standing to challenge the searches at the location in which they resided at the time of the search.

With respect to locations in which Defendants did not reside at the time of the searches, Jose Anthony Diaz and Mercedes Gonzalez-Diaz state that "for a number of years [they] were associated with [IVM] from the fall of 2009 and spent time either residing at or working at" the 427 Broadway Street, 517 Jefferson Avenue, 463 West Hamilton Avenue, 1765 West Hamilton Avenue, and 1810 Smoketree Drive locations.  (ECF No. 469-1, ¶ 3.)  Jose Demara Flores states that "during the four years leading up to the execution of the search warrant in 2018," he "stayed at, lived at, or worked at all the church facilities in San Diego, El Centro and Calexico."  (ECF No. 471-1, ¶¶ 3-4.)  Victor Gonzalez states that "a[t] the time the search warrants in this case were executed, May 16, 2018, [he] was a pastor at Imperial Valley Ministries (IVM)" and "[he] worked at, or IVM documents were stored at" all the locations covered by the search warrants at issue.  (ECF No. 473, Declaration of Victor Gonzalez, ¶¶ 3-4.)

Defendants' statements that they worked at or spent time at certain IVM locations are insufficient to confer standing.  *See Byrd v. United States*, 138 S. Ct. 1518, 1522 (2018) ("legitimate presence on the premises, standing alone, is insufficient" to establish a reasonable expectation of privacy); *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 697 (9th Cir. 2009) ("it does not suffice for Fourth Amendment standing merely to own a business, to work in a building, or to manage an office").  Defendants fail to provide evidence regarding, for

example, what they specifically did at each location, whether they had any private spaces within the locations, and whether they had the authority to exclude others.  *See Martinez v. Nygaard*, 831 F.2d 822, 826 (9th Cir. 1987) (holding that workers "had no reasonable expectation of privacy in their workplace" because "the workers had no private space in any part of the building, and no authority to exclude others"); *SDI Future Health, Inc.*, 568 F.3d at 695–96 ("it is crucial to Fourth Amendment standing that the place searched be given over to the defendant's exclusive use" and "mere access to, and even use of [an office] does not lead us to find an objectively reasonable expectation of privacy") (internal citations and quotations omitted).

Defendant Victor Gonzalez argues that his status as a pastor at IVM confers standing as to all of the IVM locations that conducted church business or stored church documents.  Victor Gonzalez does not provide evidence about his specific responsibilities as an IVM pastor, and at oral argument, simply argued that it could be inferred that he was responsible for the church's operations. However, even assuming that Victor Gonzalez's status as a pastor involved some managerial authority, that alone would not be sufficient to confer standing. *See SDI Future Health, Inc.*, 568 F.3d at 696 ("we have rejected managerial authority alone as sufficient for Fourth Amendment standing" and "an employee of a corporation, whether worker or manager, does not, simply by virtue of his status as such, acquire Fourth Amendment standing with respect to company premises"); *United States v. Cella*, 568 F.2d 1266, 1283 (9th Cir. 1977) (while a "[corporate officer] had access to and control of [a company's] operations, his rights did not include any expectation of privacy over documents which were kept at the [company's] premises but over which [the corporate officer] did not show an independent possessory or proprietary interest").

//

//

19-cr-03255-BTM

The Ninth Circuit has recognized Fourth Amendment standing where

> [t]he defendants exercised, in the context of a small, family-run business housing only 25 employees at its peak, managerial control over the day-to-day operations of the office where the [evidence was seized], they owned the building where the office was located, and they not only could access the office but actually exercised full access to the building.

*SDI Future Health, Inc.*, 568 F.3d at 696 (citing *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116-17 (9th Cir. 2005)) (internal quotations omitted).  The Ninth Circuit has also stated that "exclusive use of an office may be sufficient."  *Id.* at 697 (citing *Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1335 (9th Cir. 1987) and *Mancusi v. DeForte*, 392 U.S. 364, 369 (1968)).  However, Victor Gonzalez does not provide evidence that he exercised daily management and control over any of the IVM locations and does not provide evidence that he maintained offices at any of the IVM locations, that he had exclusive use of those offices, or that evidence was seized from those offices.

"[E]xcept in the case of a small business over which an individual exercises daily management and control, an individual challenging a search of workplace areas beyond his own internal office must generally show some personal connection to the places searched and the materials seized."  *SDI Future Health, Inc.*, 568 F.3d at 698.  To "determine the strength of such personal connection," the Ninth Circuit considers the following factors:

> (1) whether the item seized is personal property or otherwise kept in a private place separate from other work-related material; (2) whether the defendant had custody or immediate control of the item when officers seized it; and (3) whether the defendant took precautions on his own behalf to secure the place searched or things seized from any interference without his authorization. Absent such a personal connection or exclusive use, a defendant cannot establish standing for Fourth Amendment purposes to challenge the search of a workplace beyond his internal office.

*Id.*  Victor Gonzalez does not provide evidence for the Court to evaluate his

1   personal connection with the places searched and the materials seized.

2       Further, Victor Gonzalez's statement that "IVM documents were stored at"

3   various IVM locations is insufficient to confer standing.  *See United States v.*

4   *$40,955.00 in U.S. Currency*, 554 F.3d 752, 757 (9th Cir. 2009) ("we have never

5   held that storage alone confers a Fourth Amendment interest in the area

6   searched").

7       Accordingly, the Court holds that, on the record submitted by Defendants,

8   no Defendant has established standing to challenge searches of locations in

9   which they did not reside at the time of the searches.

10      **B. Particularity of the Search Warrants**

11      Defendants argue that the search warrants lacked particularity, because

12  the "warrants afforded unlimited discretion to the executing officers to seize

13  whatever religious materials that, in their discretion, fall within the terms of the

14  general warrant authorization."  (Mot. at 17.)  Of the nine categories of evidence

15  that the search warrants identified for seizure, Defendants only specifically object

16  to one category: "representations made to victims, including documentation or

17  recordings, flyers, solicitations, business cards, actual or purported work

18  contracts, rules, or related documentation of victims' obligations or

19  responsibilities."  (*See id.*)  Defendants argue that "the warrants target

20  documentation, flyers, rules, solicitations etc… for the ideas that they contained."

21  (*Id.*)

22      "The Fourth Amendment requires that a warrant particularly describe both

23  the place to be searched and the person or things to be seized.  The description

24  must be specific enough to enable the person conducting the search reasonably

25  to identify the things authorized to be seized."  *United States v. Spilotro*, 800 F.2d

26  959, 963 (9th Cir. 1986).  "This requirement prevents general, exploratory

27  searches and indiscriminate rummaging through a person's belongings."  *Id.*

28  "The specificity required in a warrant varies depending on the circumstances of

19-cr-03255-BTM

1  the case and the type of items involved.  *Id.*  "In determining whether a
2  description is sufficiently precise, [the Ninth Circuit] ha[s] concentrated on one or
3  more of the following: (1) whether probable cause exists to seize all items of a
4  particular type described in the warrant, (2) whether the warrant sets out
5  objective standards by which executing officers can differentiate items subject to
6  seizure from those which are not, and (3) whether the government was able to
7  describe the items more particularly in light of the information available to it at the
8  time the warrant was issued."  *Id.* (internal citations omitted).

9       First, probable cause existed to seize "representations made to victims,
10  including documentation or recordings, flyers, solicitations, business cards,
11  actual or purported work contracts, rules, or related documentation of victims'
12  obligations or responsibilities."  The affidavit of FBI Special Agent James Koch in
13  support of the applications for the search warrants explained that IVM members
14  allegedly compelled program participants to provide labor and services through
15  religious-based threats and pressure, false promises about returning participants
16  home or transferring them to affiliate programs closer to their homes or family,
17  and through contracts regarding IVM program rules, including rules requiring the
18  surrender of personal belongings.  (ECF No. 447-1 at 34-37.)  The affidavit
19  identifies multiple IVM victims who described receiving flyers from IVM members
20  about IVM's drug rehabilitation services, being promised that IVM would return
21  them home if they did not like the program, being pressured to stay at IVM with
22  religious appeals, and being subjected to certain IVM program rules, including
23  rules requiring soliciting donations from the public and giving their personal cash
24  or government benefits to IVM.  (*Id.* at 7-21.)  Further, the affidavit identified a
25  December 1, 2017 letter from IVM pastor Victor Gonzalez that specified that IVM
26  participants were advised multiple times of IVM program rules.  (*Id.* at 21.)  The
27  affidavit of FBI Special Agent James Koch establishes that IVM's representations
28  made to victims—including those contained in flyers, contracts and program

19-cr-03255-BTM

1   rules—were not targeted for seizure due to their religious content, but rather

2   because they were evidence of the threats, pressures, and false promises IVM

3   allegedly used to commit forced labor.  Therefore, there was probable cause to

4   seize this category of evidence.

5          Second, Defendants fail to identify how the search warrants lacked

6   objective standards by which the executing officers could differentiate items

7   subject to seizure from those which were not.  "Where the materials sought to be

8   seized may be protected by the First Amendment, the requirements of the Fourth

9   Amendment must be applied with 'scrupulous exactitude'" and "[w]here

10  presumptively protected materials are sought to be seized, the warrant

11  requirement should be administered to leave as little as possible to the discretion

12  or whim of the officer in the field."  *Zurcher v. Stanford Daily*, 436 U.S. 547, 564

13  (1978) (citing *Stanford v. State of Tex.*, 379 U.S. 476, 485 (1965)).  In the context

14  of search warrants for newspaper offices—which the Court finds sufficiently

15  analogous to search warrants for churches, with respect to implicating First

16  Amendment considerations—the Supreme Court has stated:

17        Neither the Fourth Amendment nor the cases requiring consideration
18        of First Amendment values in issuing search warrants, however, call
          for imposing [a separate regime].  Aware of the long struggle between
19        Crown and press and desiring to curb unjustified official intrusions,
20        the Framers took the enormously important step of subjecting
          searches to the test of reasonableness and to the general rule
21        requiring search warrants issued by neutral magistrates.  They
          nevertheless did not forbid warrants where the press was involved,
22        did not require special showings that subpoenas would be
23        impractical, and did not insist that the owner of the place to be
          searched, if connected with the press, must be shown to be
24        implicated in the offense being investigated.  Further, the prior cases
25        do no more than insist that the courts apply the warrant requirements
          with particular exactitude when First Amendment interests would be
26        endangered by the search.  As we see it, no more than this is
27        required where the warrant requested is for the seizure of criminal
          evidence reasonably believed to be on the premises occupied by a

28

1
2
3
4

> newspaper.  Properly administered, the preconditions for a warrant—
> probable cause, specificity with respect to the place to be searched
> and the things to be seized, and overall reasonableness—should
> afford sufficient protection against the harms that are assertedly
> threatened by warrants for searching newspaper offices.

5
6
7
8
9
10
11
12

*Zurcher*, 436 U.S. at 565.  During oral argument, when addressing the category "representations made to victims," Defendant specifically attacked the word "representations," because it permitted the seizure of religious writings, teachings, and scriptures.  However, *Stanford* and *Zurcher* do not bar the searches of religious locations or the seizure of religious documents that are also criminal evidence, and as explained above, religious documents were seized not because of their religious content, but as evidence of the threats, pressures, and false promises IVM allegedly used to commit forced labor.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Further, the Government argues that the "representations to victims" category sets out objective standards—both temporal and substantive—for officers to differentiate between which items were subject to seizure and which were not.  *See United States v. Kahre*, 737 F.3d 554, 566 (9th Cir. 2013) ("warrants sufficiently limited the agents' discretion," in part because the term "all records," was "temporally limited" and "confined to records associated with [certain] corporate entities and with the use of [certain types of] payments").  Temporally, the search warrants were limited to evidence from January 1, 2016 to the dates of the search warrants.  (ECF No. 447-2, Exh. A., at 6-7, 10-11, 17-18, 22-23, 27-28, 32-33; ECF No. 447-3, Exh. B, 5, 10.)  Substantively, the search warrants were limited to representations made to victims, as opposed to any and all representations contained in personal writings of IVM members or internal IVM communications between non-victim IVM members.  The Court holds that Defendants have not identified deficiencies in the search warrants that would give executing officers an impermissible level of discretion in determining which items were subject to seizure.

19-cr-03255-BTM

Third, there is no indication that the government could have described the items more particularly in light of the information available to it at the time the warrants were issued.  At the time the search warrants were issued, based on the affidavit of FBI Special Agent James Koch, alleged victims of IVM described being given flyers, being made promises, signing contracts, and being subject to certain program rules.  (ECF No. 447-1, at 7-21.)  IVM pastor Victor Gonzalez also specified that IVM participants were advised multiple times of IVM program rules.  (*Id.* at 21.)  In turn, the search warrants specified for seizure "representations made to victims, including documentation or recordings, flyers, solicitations, business cards, actual or purported work contracts, rules, or related documentation of victims' obligations or responsibilities."  (ECF No. 447-2, Exh. A., at 6-7.)  Defendants do not address how the categories enumerated in the search warrants could have been described more particularly in light of the information available to the Government at the time the warrants were issued. *See United States v. Vasquez*, 654 F.3d 880, 884 (9th Cir. 2011) (holding that a search warrant "described the documents to be seized with sufficient particularity," in part because there "[was] no indication that the government was able to describe [the documents seized] in any more detail prior to the search").

The Court holds that Defendants have not met their burden to demonstrate that the search warrants were not sufficiently particular.

## C. Execution of the Search Warrants

Defendants argue that "the execution of the search warrant and the documentation seized went well beyond the scope of the warrant, and was so egregious as to constitute a general search invalidating the warrant."  (Mot. at 18.)  Defendants argue that officers seized documents that were outside of the permissible time range and outside of the substantive categories of the search warrants.  (*See id.*)  The Government has "agree[d] not to admit documents seized pursuant to the warrants that relate only to material and conduct before

19-cr-03255-BTM

1  January 1, 2016."  (ECF No. 436 at 12.)

2        "Ordinarily, only evidence that is obtained in violation of a warrant is

3  suppressed.  However, in cases where there is a 'flagrant disregard' for the terms

4  of the warrant, the district court may suppress all of the evidence, including

5  evidence that was not tainted by the violation."  *United States v. Chen*, 979 F.2d

6  714, 717 (9th Cir. 1992) (internal citations omitted).  "This extraordinary remedy

7  should be used only when the violations of the warrant's requirements are so

8  extreme that the search is essentially transformed into an impermissible general

9  search."  *Id.*  "Thus, wholesale suppression is appropriate under the flagrant

10  disregard standard only when the officers transform the search into an

11  impermissible general search by ignoring the terms of the warrant and engaging

12  in indiscriminate fishing."  *Id.*  The Ninth Circuit "ha[s] refused to suppress all of

13  the evidence where the agents who exceeded their authority under the warrant

14  were motivated by considerations of practicality rather than by a desire to engage

15  in indiscriminate fishing."  *Id.* (internal citation and quotations omitted).  The

16  'flagrant disregard' standard applies regardless of whether any heightened

17  privacy interests are implicated.  *See United States v. Mittelman*, 999 F.2d 440,

18  445 (9th Cir. 1993) (applying the 'flagrant disregard' standard to the search of a

19  law office and explaining that while "special care should be taken when

20  conducting a search of law offices, separate legal rules are not necessary for

21  remedying such searches when they exceed the scope of the warrant").

22        With respect to documents seized outside of the time frame specified in the

23  search warrants, Defendants rely on the Declaration of Anthony E. Colombo,

24  who states that "[i]n reviewing the discovery material there were 54,727 pages of

25  documents seized as a result of the search warrants, and 37,453 pages of those

26  documents were outside of the scope of the time frame requested in the search

27  warrants."  (ECF No. 449-1, Declaration of Anthony E. Colombo, Jr., ¶ 4.)  In

28  response, the Government clarifies that the numbers Defendants rely on are

aggregate numbers from the searches of nine IVM locations.  (Gov. Sur Reply at 6.)  As the Court explained above, each Defendant has only established standing to challenge the searches of the IVM locations in which they resided at the time of the searches.  With respect to the locations that Defendants have standing, the Government puts forth the following numbers regarding documents seized outside of the permissible date range of the search warrants: **(i)** at the 2041 Low Road, El Centro, CA location, in which Defendants Jose Morales, Ana Karen Robles-Ortiz and Sergio Partida have standing, no documents outside the warrant's scope were alleged to have been seized; **(ii)** at the 205 Lopez Court, Calexico, CA location, in which Defendants Jose Anthony Diaz, Mercedes Gonzalez-Diaz and Jose Flores have standing, 36 out of 478 pages of documents, or 7.5%, were alleged to have been outside of the warrant's scope; **(iii)** at the 1810 Smoketree Drive, El Centro, CA location, in which Defendants Susan Gonzalez and Victor Gonzalez have standing, 133 out of 1592 pages of documents, or 8.3%, were alleged to have been outside of the warrant's scope; and **(iv)** at the 463 West Hamilton Avenue, El Centro, CA location, in which Defendants Azucena Torres and Arnoldo Bugarin have standing, 2000 out of 4,722 pages of documents, or 42.3%, were alleged to have been outside of the warrant's scope, with 1,802 pages of those allegedly out of scope documents coming from a single box of discharge documents.[1]  (*See* ECF No. 472 at 6-7.)

With respect to the locations in which no Defendants have standing, the Government puts forth the following numbers regarding documents seized outside of the permissible date range of the search warrants: **(i)** at the 1022 Euclid Avenue, El Centro, CA location, 10 out of 318 pages of documents, or

---

[1] The Government explains that its numbers were compiled by "identifying boxes associated with single locations" and then "scrolling through the same Bates-stamped productions provided to defense to identify the source of the documents they contest in production that contained separated seized envelopes that were from multiple locations."  (ECF No. 472 at 7.)

3.1%, were alleged to have been outside of the warrant's scope; **(ii)** at the 517 Jefferson Avenue, Chula Vista, CA location, 87 out of 939 pages of documents, or 9.2%, were alleged to have been outside of the warrant's scope; **(iii)** at the 427 Broadway Street, El Centro, CA location, 7,969 out of 12,408 pages of documents, or 64.2%, were alleged to have been outside of the warrant's scope; and **(iv)** at the 1765 Hamilton Avenue, El Centro, CA location, 27,021 out of 34,186 pages of documents, or 79%, were alleged to have been outside of the warrant's scope.  (*See id.*)  According to the Government's numbers, most documents seized outside of the permissible timeframe of the search warrants occurred at the 1765 Hamilton Avenue, El Centro, CA location, which was the residence of the Rivas family, none of whom are defendants in this case.

The Court will consider the aggregate overbreadth numbers from all the locations, regardless of standing, as some evidence of intent by the executing officers, as an entire team, to conduct a general search.  However, as to the individual locations in which Defendants have standing, Defendants fail to show that executing officers actually conducted general searches, particularly in light of the low percentages of allegedly out of scope documents seized at most of the locations—for example, 0% at the 2041 Low Road location, 7.5% at the 205 Lopez Court location, and 8.3% at the 1810 Smoketree Drive location.  *See United States v. Yi*, 977 F.2d 594 (9th Cir. 1992) ("because the majority of the items seized clearly fell within the warrant's scope, this disregard was not flagrant"); *United States v. Yerger*, 12 F.3d 1110 (9th Cir. 1993) ("incidental excesses require suppression of only the items not lawfully subject to search and seizure") (internal quotations omitted).  For the 463 West Hamilton Avenue location, in which 2000 out of 4,722 pages of documents, or 42.3%, were alleged to have been outside of the warrant's scope, Defendants fail to show that executing agents were not motivated by considerations of practicality, where 1,802 pages of those allegedly out of scope documents came from a single box

19-cr-03255-BTM

of discharge documents.  *See United States v. Tamura*, 694 F.2d 591, 595-97 (9th Cir. 1982) (where agents "took large quantities of documents that were not described in the search warrant . . . because the documents were intermingled and it was difficult to separate the described documents from the irrelevant ones," the Ninth Circuit did not find that a general search took place because the "the Government's wholesale seizures were motivated by considerations of practicality rather than by a desire to engage in indiscriminate fishing," and explained that "[g]enerally, the exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well"); *Chen*, 979 F.2d at 718 (even where agents "did not read or fully understand the terms of the warrant," that "d[id] not indicate that there was a flagrant disregard justifying the suppression of all of the evidence" because "the agents were motivated by considerations of practicality rather than by a desire to engage in indiscriminate fishing"); *United States v. Whitten*, 706 F.2d 1000, 1009-10 (9th Cir. 1983) ("[a]lthough the search was not scrupulously confined to the terms of the warrant, it does not follow necessarily that all of the evidence seized must be suppressed," even though "[t]here was a question whether the agents conducting the search were adequately briefed on the terms of the warrant and whether they respected the limitation barring seizure of items not mentioned in the warrant"). Therefore, even considering that the executing officers, as a team, may have had an intent to conduct general searches at the IVM locations, total suppression is not warranted because Defendants fail to show that, at each location in which Defendants have standing, general searches actually occurred.  Rather, the low number of out-of-scope documents seized at those locations, or the seizure of a single box containing the majority of out-of-scope documents from a particular location, indicate that the executing officers for those locations did not flagrantly disregard the terms of the search warrants and were not motivated by a desire to

1   engage in indiscriminate fishing expeditions.

2        Defendant Azucena Torres also argues that "the Court should not only

3   consider the volume of the documents seized that were outside the scope of the

4   search warrant, but also the level of intrusion upon the defendant's privacy in the

5   types of documents seized," which included "both personal and business

6   financial records, including check registries, deposit receipts, and bank

7   statements; tax records; tithing records; intake and discharge paperwork for

8   participants in the Imperial Valley Ministry's rehabilitation program; personal

9   letters; and religious writings." (ECF No. 449 at 3-4.) However, Defendant does

10  not explain why at least some of these categories of documents did not fall within

11  the explicit scope of the search warrants, which for example, permitted seizure of

12  "business records, including bank account records, ledgers, log books, or related

13  documentation of victims signing in or out, acknowledging the rules and

14  responsibilities, hours worked by victims, funds owed to victims, and amounts

15  deducted from funds owed to victims for various charges and expenses,"

16  "correspondence with persons involved in the recruitment, transportation,

17  employment, harboring, oversight, management, or contracting of victims," and

18  "representations made to victims, including documentation or recordings, flyers,

19  solicitations, business cards, actual or purported work contracts, rules, or related

20  documentation of victims' obligations or responsibilities." (*See* ECF No. 447-2 at

21  22-23.) To the extent any evidence was seized outside of the substantive

22  categories of the search warrants and within the permissible time frame, while

23  Defendant Azucena Torres has provided some examples of seized documents,

24  (*see* ECF No. 447-5, Exh. D), those samples of documents, standing alone, are

25  not sufficient to establish a general search. *See United States v. Crozier*, 777

26  F.2d 1376, 1381 (9th Cir. 1985) (while agents "might seize irrelevant items such

27  as personal letters and bank statements addressed to the occupant . . . we hold

28  that the agents' violation of the warrant's terms was not flagrant and did not

19-cr-03255-BTM

1  invalidate the seizure of relevant items").  Absent evidence of, for example, the
2  number of impermissible documents seized in relation to the total number of
3  documents seized at a challenged location, Defendant has not established that
4  any seizure of documents outside the substantive categories of the search
5  warrant went beyond incidental excesses.  *See Yerger*, 12 F.3d 1110 (9th Cir.
6  1993) ("incidental excesses require suppression of only the items not lawfully
7  subject to search and seizure"); *Yi*, 977 F.2d 594 (9th Cir. 1992) ("because the
8  majority of the items seized clearly fell within the warrant's scope, this disregard
9  was not flagrant").  In addition, with respect to any evidence that was seized
10 outside of the substantive categories of the search warrants, Defendant has not
11 established that the officers executing the search warrants were motivated by a
12 desire to engage in an indiscriminate fishing expedition rather than by
13 considerations of practicality.  Indeed, during oral argument, Defendant's counsel
14 represented that, compared to the documents seized outside of the permissible
15 timeframes, the amount of evidence seized outside of the substantive categories
16 of the search warrants was a "smaller percentage" and that "the majority of what
17 was there was responsive to what was . . . particularized in the warrant."

18     With respect to evidence seized outside of the permissible time frames of
19 the search warrants, the Government has "agree[d] not to admit documents
20 seized pursuant to the warrants that relate only to material and conduct before
21 January 1, 2016."  (ECF No. 436 at 12.)  Courts have found such agreements to
22 be a sufficient remedy.  *See Chen*, 979 F.2d at 719 (holding that the
23 government's agreement to suppress evidence seized outside of the scope of a
24 search warrant was "a sufficient remedy").  As an additional measure, the Court
25 will grant Defendant's Motion in part as to partial suppression, specifically as to
26 the seized evidence outside of the timeframes specified in the search warrants,
27 including any derivative evidence.  *See Wong Sun v. United States*, 371 U.S.
28 471, 484 (1963) ("[E]vidence seized during an unlawful search c[an] not

19-cr-03255-BTM

constitute proof against the victim of the search. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions."); *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989) ("The exclusionary rule, which bars the admission of evidence obtained in violation of the Constitution, extends beyond the direct products of government misconduct to evidence derived from the illegal conduct, or fruit of the poisonous tree.").  To the extent individual Defendants seek to suppress particular documents they believe were within the permissible timeframes but outside of the substantive categories of the search warrants, they may do so.  *See United States v. Sears*, 411 F.3d 1124, 1131 (9th Cir. 2005) ("When officers violate the terms of a warrant in execution, partial suppression is the norm unless the officers engaged in a general search.").  However, on the current record, the extraordinary remedy of wholesale suppression is not warranted.

### D. Magistrate Judge

"The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence," but that "[i]ts protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13–14 (1948).  "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975).  "[A] defendant may show judicial abandonment through any one of the following ways: (1) the magistrate was biased against the defendant or otherwise personally interested in issuing the warrant; (2) the magistrate functionally occupied a different, non-neutral role while making the probable cause determination; or (3) the magistrate failed to review the requisite

affidavits or materials prior to making a probable cause determination." *United States v. Barnes*, 895 F.3d 1194, 1202 (9th Cir. 2018).

Defendants challenge the affidavit of FBI Special Agent James Koch as containing "wholly conclusory statements" and "unreliable sources of information." (*See* Mot. at 19-30.)  Defendants do not argue and do not provide any evidence that Magistrate Judge Crawford was biased against any of the Defendants or personally interested in issuing the warrants, occupied a different, non-neutral role while making the probable cause determinations, or failed to review Agent Koch's affidavits prior to making her probable cause determinations.  Defendants have not established that Magistrate Judge Crawford was not a neutral and detached magistrate when issuing the search warrants.

### E. Probable Cause

"An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).  "[T]his substantial basis standard of review embodie[s] the great deference that should be shown by reviewing courts to magistrates' probable cause determinations." *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984) (internal citation and quotation omitted).  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.  "Ordinarily, a magistrate's determination that sufficient probable cause exists to issue a search warrant will not be overturned unless it is clearly erroneous." *United States v. Elliott*, 893 F.2d 220, 222 (9th Cir. 1990).

Defendants argue that "[a]ll of the issued warrants ground probable cause

upon wholly conclusory statements, and unreliable informant information: statements from IVM participants suffering from homelessness, substance withdrawal symptoms, mental illness, or a combination thereof." (Mot. at 21.) The Court is not persuaded by Defendants' characterization.

The May 19, 2018 affidavit from Agent Koch included accounts from multiple alleged victims of IVM, including Denise Stewart, Priscilla Parra, Jaime Beckwith, Zach Cochran, Carlos Higuera, Remos Loveit, Thomas Miller, Toby Dunnagan, Anne Ruth Cox, Hector Soto, and Vanesa Snyder. The alleged victims' accounts include descriptions of being solicited by IVM members for their drug rehabilitation services, being made promises about their ability to leave IVM and return home but being denied transportation back home, being isolated from family and friends, including a 30 day blackout period, having their personal belongings taken upon entry into the IVM programs, being required to give a percentage of their personal cash to IVM, being required to register for certain government benefits and give certain government benefits to IVM, having certain of their government benefits pooled together with other IVM participants' benefits, being forced to participate in certain religious practices, being required to solicit donations from the public, being required to do chores, being physically restrained, being denied food and water, being denied access to medical care, being denied the return of their identification documents, and being locked inside IVM facilities. (*See* ECF No. 447-2 at 7- 21.) While some facts differed between the alleged victims' accounts, many facts were consistent between the victims' accounts. The affidavit identified alleged victim-witnesses Higuera, Loveit, Miller, Soto, and Dominquez as "reportedly going to IVM specifically to address their drug or alcohol addictions." (*See id.* at 41.) The affidavit also identified the criminal histories of alleged victim-witnesses Higuera, Miller, Cox, Soto, and

19-cr-03255-BTM

Dominguez.[2] (*See id.* at 13, 14, 16, 17.)

The affidavit identified a December 1, 2017 letter written by IVM Pastor Victor Gonzalez to ECPD Code Enforcement Officers, which confirmed that IVM programs included a 30 day blackout period, that IVM participants were subject to certain rules, including having their personal property taken by IVM, that IVM had not given back some participants' personal property when those participants left, and that IVM had not assisted some participants with transportation back home. (*See id.* at 21-22.)

The affidavit included accounts from law enforcement surveillance of various IVM locations on July 25, December 13, and December 16, 2017 and January 16, 2018. The surveillance accounts included descriptions of the transportation of IVM participants to IVM locations, deadbolt locks on the front and back doors of IVM locations that prevented participants from leaving without a key, an IVM participant screaming from inside an IVM location that she wanted to leave, an IVM member telling an officer that IVM participants were not allowed to leave, and IVM participants soliciting donations from the public. (*See id.* at 22-24.)

The affidavit included accounts from additional witnesses, including ECRMC Case Manager Hindman and Javier Duran, a Program Manager of CalWorks, CalFresh/Medi-Cal at the California Department of Social Services in El Centro. Hindman's account included descriptions of IVM participants reporting to ECRMC that IVM refused to allow them to take their medications, refused to

---

[2] While Defendants attack the credibility of individual alleged victim-witnesses based on their mental illnesses and substance abuse, they have not made a substantial preliminary showing that the affidavits contained intentionally or recklessly false statements or misleading omissions to warrant an evidentiary hearing. *See United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000) ("A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.")

19-cr-03255-BTM

1   return their personal property, refused to help them get back home, and forced

2   them to give IVM their government benefits.  (*See id.* at 24-25.)  Duran provided

3   investigators with records from the California Department of Social Services,

4   which allowed investigators to determine that IVM members failed to become an

5   authorized retailer to receive food stamps on behalf of participants, failed to

6   name an authorized representative to certify and receive food stamps on behalf

7   of program recipients, failed to provide the CWD with a list of IVM participants,

8   and did not return EBT cards when participants left.  (*See id.* at 26-27.)

9         The affidavit provided an analysis of activity from eight IVM related bank

10   accounts that indicated the commingling of personal and business funds and the

11   use of IVM participants' welfare benefits to pay for more than just the

12   participants' meals.  (*See id.* at 28-33.)

13         With respect to the second set of search warrants, the June 5, 2018

14   affidavit of Agent Koch relied on the same information as the first affidavit, and

15   added the account of James Steven Alsip, who reported that his daughter, Mercy

16   Diaz, was an IVM member at the 205 Lopez Court, Calexico, CA location and

17   was present during the execution of the first search warrant.  Mercy Diaz

18   informed Alsip that the agents had not seized all the money in the location during

19   the first search, and that most of the money was located in Pastor Rivas' home at

20   1765 Hamilton Avenue, El Centro, CA.  (*See id.* at 57-58.)  The affidavit also

21   included an account of a February 16, 2018 law enforcement surveillance of the

22   1765 Hamilton Avenue, El Centro, CA location, where IVM members were seen

23   transporting two tote bags and a small white box into the location.  (*Id.* at 58.)

24   The affidavit also included the account of a May 22, 2018 interview with IVM

25   pastor Victor Gonzalez, who stated that the directors of each IVM location deliver

26   to him the money collected from participants each day, and he then delivers that

27   money to Pastor Rivas' house.  (*Id.*)

28   //

19-cr-03255-BTM

1     The affidavits of Agent Koch contained information from multiple alleged

2   victim-witnesses with similar accounts, letters from IVM members, law

3   enforcement surveillance, third-party witnesses, and IVM financial records.  The

4   Court holds that the affidavits of Agent Koch provided Magistrate Judge Crawford

5   with probable cause to issue the search warrants.[3]  *See United States v. Castillo*,

6   866 F.2d 1071, 1077 (9th Cir. 1988) ("A magistrate may consider hearsay

7   statements in an affidavit in determining whether there is probable cause to

8   believe that a person is guilty of a crime"); *United States v. Banks*, 539 F.2d 14,

9   17 (9th Cir. 1976) ("A detailed eyewitness report of a crime is self-corroborating;

10   it supplies its own indicia of reliability."); *Pritchett v. Russell*, 92 F.3d 1193 (9th

11   Cir. 1996) (finding probable cause for a warrant where there were "statements

12   from two eye-witnesses"); *United States v. Nielsen*, 371 F.3d 574, 580 (9th Cir.

13   2004) (finding probable cause where informants had first-hand knowledge and

14   where the veracity of their statements was "buttressed by the similarity of their

15   accounts").

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26

27   _____

28   [3] Because the Court does not find deficiencies in the search warrants issued by Magistrate Judge Crawford, it does not address the applicability of the good faith exception.

19-cr-03255-BTM

### III. CONCLUSION

Based upon the foregoing, Defendant's Motion to Suppress Evidence is **GRANTED IN PART AND DENIED IN PART**.  Specifically, Defendant's Motion to Suppress Evidence is granted as to all seized evidence outside of the timeframes specified in the search warrants (January 1, 2016 to the dates of each warrant), including derivative evidence. To the extent individual Defendants seek to suppress particular documents they believe were within the permissible timeframes but outside of the substantive categories of the search warrants, they may do so in a separate motion.  Defendant's Motion is denied as to total suppression of the seized evidence.

IT IS SO ORDERED.

Dated:  November 8, 2021

Honorable Barry Ted Moskowitz
United States District Judge

19-cr-03255-BTM